**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALICE M. KURKOWSKI**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:06cv1121 |
| | ) | **Electronic Filing** |
| **JOANNE BARNHART**, | ) | |
| **COMMISSIONER OF** | ) | |
| **SOCIAL SECURITY**, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

May 31, 2007

I.    **INTRODUCTION**

Plaintiff, Alice M. Kurkowski ("Plaintiff"), brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383 (c), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for supplemental security income ("SSI") under Title II of the Social Security Act ("Act"), as amended. 42 U.S.C. §§ 401-433. The parties have filed cross motions for summary judgment, and the record has been developed at the administrative proceedings.

II.    **PROCEDURAL HISTORY**

Plaintiff filed an application for SSI benefits on November 30, 2004, alleging disability since September 15, 2000, due to back pain, stress and memory problems, and migraine headaches. R. 23, 51, 95. Plaintiff's claim was initially denied, and she filed a timely request for a hearing. R.7. A hearing was held on February 7, 2006, in Latrobe, Pennsylvania, before Administrative Judge John J. Mulrooney ("ALJ"). R. 385. Plaintiff was represented by counsel, A. Tereasa Rerko, and Vocational Expert ("VE"), Eugene Hoffman, also appeared and testified. R. 385. The ALJ issued an unfavorable decision on  April 24, 2006, finding that the Plaintiff was "not disabled" within the meaning of the Social Security Act. R. 11-18. The ALJ's decision became the Commissioner's final decision when on July 19, 2006, the Appeals Council denied

Plaintiff's request for review. R. 4-6. The instant action now seeks review of the Commissioner's final decision, and the matter is before this court on the cross-motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**III.     STATEMENT OF THE CASE**

Plaintiff was born on October 6, 1959. R.19. She is currently forty-seven (47) years old, making her forty-five (45) years old at the time of application for SSI benefits and forty-six (46) at the time of the administrative hearing. R. 11. Under the Commissioner's regulations, applicants under the age of 50 are considered "younger individuals" and their age is not considered a significant impediment to adapting to new work situations. 20 C.F.R. § 416.963. Plaintiff has a high school education and worked as a housekeeping assistant manager from 1994-2000. R. 150. The skill level of the job held  by Plaintiff is described by the VE in this case as medium, semi-skilled work activity. Although the Dictionary of Occupational Titles identifies this work as light, semi-skilled  work activity, the VE testified that in his experience, such a position is medium in nature. R. 16.

On November 30, 2004, Plaintiff filed an application for disability insurance, alleging disability since September 15, 2000. R. 51. Plaintiff sustained an injury to her lower back when lifting a trash can at work in November 1999. R. 15. A lumbar myelogram revealed moderate disc bulging at L4-5 and moderate disk protusion at L5 S1. R. 142. Daniel J. Muccio, M.D., performed a lumbar disketomy at L5-S1 and a hemilaminectomy at L4-5 in February 2000. R. 145. In a March 2000 follow-up with Dr. Muccio, Plaintiff reported pain and discomfort even though the MRI and physical examination were normal. R. 156. Dr. Muccio referred Plaintiff to Bill Hennessey, M.D. for the development of a postoperative rehabilitation program. R. 156. Dr. Hennessey  stated that Plaintiff could be released to sedentary work in March 2000, and to light work in June 2000. R. 161, 167, 169.

Plaintiff continued to report lower back pain, for which she received caudal epidural

blocks, bilateral paravertabral facet nerve blocks at L4, L5, and S1, and bilateral posterior SI joint injections on August 4, 2000; August 22, 2000; August 25, 2000; and  September 8, 2000. R. 172-74. Additionally, two weeks after Plaintiff sought disability, a functional capacity evaluation performed by Dr. Thor Mathos revealed her ability to  perform full time sedentary work activity and some evidence of symptom magnification. R. 180.

Plaintiff underwent a discography on August 13, 2002 due to continued complaints of low back pain. The discogram showed bad discs at L3-4, L4-5, and L5-S1, and maintained disc height at L3-4 and L4-5. R. 274. Plaintiff underwent an L5-S1 anterior lumbar interbody fusion in September 2002. She showed minimal improvement following physical therapy as range of movement only increased by 50 percent. X-ray  evidence demonstrated a healed fusion despite plaintiff's continued complaints of low back pain. R. 269-73.

In January 2003, Plaintiff had no radicular complaints or neurological deficits. R. 271. Plaintiff completed physical therapy but continued to have deficits in movement and bending. R. 242. A CT scan showed a recurrent protrusion at L4-5. R. 258, 264. She was to continue using OxyContin for pain. R. 265.

In May 2003 Dr. Michael A. Cantino, an orthopedist, examined Plaintiff and found she had normal straight leg-raising, sensation, and reflexes. R. 276-77. She had  unrestricted range of motion of the legs but could not walk on her heels or toes. R. 277. Dr. Cantino administered a CT myelogram that showed a healed fusion of LF-S1. R. 267, 269. Dr. Kramer also found that Plaintiff improved since surgery, and could do nothing  more for Plaintiff unless she consented to further surgery. R. 269.

In August 2004, Plaintiff underwent a second functional capacity evaluation but was unable to complete material handling or job simulation. R. 280. Thomas A. Buches, M.S., P.T., O.C.S., found that Plaintiff "performed in a manner indicative of symptom magnification." R. 280. Buches further noted that Plaintiff had better abilities to perform activities when exiting the clinic than she did during testing. R. 281.

3

Plaintiff returned for another functional capacity evaluation with Buches in  September 2004. While she was unable to complete the test, Buches noted that she had  greater ability to perform tasks than she had one month earlier. R. 288. Overall, Buches deemed Plaintiff able to perform sedentary work with no squatting or kneeling, and  occasional walking, crawling, balancing and climbing. R. 291.

In December 2004 an EMG showed no evidence of radiculopathy, plexopathy, peripheral nerve entrapment or peripheral nerve neuropathy. Plaintiff exhibited normal straight leg-raising, range of motion, reflexes, and strength and function of her legs. R. 372.

In February 2005, Kumar V. Rama, M.D., a state agency physician, reviewed  Plaintiff's medical evidence. Dr. Rama stated that Plaintiff could perform light work with occasional postural activities. R. 315-16. Furthermore, Dr. Rama suggested that Plaintiff's subjective complaints were only partially credible based on the inconsistent information she provided. R. 322.

In February 2006, Dr. Gottron, Plaintiff's family practitioner, opined that Plaintiff was unable to have a meaningful job or perform any activities. R. 384. Dr. Gottron relied on previous functional capacity evaluations performed by Buches to make this statement. Despite using the same medical evidence, the professionals reached different conclusions. In September 2004, Buches noted that Plaintiff did have capacity to perform sedentary  work. R. 291.

IV.    STANDARD OF REVIEW

This Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). Congress has expressed its intention that "[t]he findings of the Commissioner of

Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents (her) from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health and Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. § 423(d)(1). A claimant is considered to be unable to engage in substantial gainful activity "only if (her) physical or mental impairment or impairments are of such severity that (she) is not only unable to do (her) previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To support his ultimate findings, an ALJ must do more than state factual conclusions. He must make specific findings of fact. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983). The ALJ must consider all medical evidence contained in the record and must provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). The Social Security Administration ("SSA"), acting pursuant to its rulemaking authority under 42 U.S.C. ¤ 405(a), has developed a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the

5

agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly  limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determined whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimants age, education, and past work experience), and to determine whether the claimant is the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), capable of performing other jobs existing in significant numbers in 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003)(footnotes omitted).


V.     DISCUSSION

        Plaintiff argues that the ALJ's determination merits reversal by this Court for

three reasons. First, Plaintiff asserts that the ALJ's conclusion that her condition did not

meet or equal listing 1.04 in 20 C.F.R. Part 404, Subpart P, Appendix 1 is not supported

by substantial evidence. Second, Plaintiff alleges that the ALJ erred in concluding that

Plaintiff's testimony concerning the intensity, duration and limiting effects of her

symptoms was not entirely credible. Third, Plaintiff asserts the ALJ erred in discounting

the medical opinions of Plaintiff's primary care physician and pain management

physician.

        The ALJ used the five-step process described above and outlined by the Social

Security Act to evaluate Plaintiff's SSI claim. 20 C.F.R § 404.1520(a). The ALJ

acknowledged the medical claims presented by Plaintiff such as degenerative disc disease

of the lumbar spine with residuals of a lumbar hemilaminectomy, foraminotomy, diskectomy and

interbody fusion and migraine headaches. The ALJ indicated that the Plaintiff's impairments were severe. R. 12. The ALJ then determined whether Plaintiff's severe impairments met the severity of impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. During his evaluation of Plaintiff's impairments, the ALJ found the medical evidence of record did not indicate Plaintiff's severe impairments met the requirements of Listing 1.04. R. 16.

The ALJ specifically explained why these criteria were not met. The ALJ found  "no evidence of herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, facet arthritis, or vertebral fracture resulting in compromise of a nerve root or spinal cord with limitation of spine motion and motor loss accompanied by sensory or reflex loss with  positive straight-leg raising" R. 14.

The ALJ's findings are in fact supported by substantial evidence. As stated above, in order to show that her impairments met or equaled Listing 1.04, Plaintiff must show findings sufficient to meet or equal every criterion. For instance, the sensory or reflex loss required by Listing 1.04 is not documented in the medical evidence. Plaintiff generally had normal reflexes (R. 160, 166. 187, 189, 193, 270-73, 277) and normal or intact sensation. R. 160, 163, 166, 173, 194, 265, 271, 301. Therefore, she did not exhibit sustained reflex or sensory loss as required. Additionally, Plaintiff only demonstrated  positive-straight leg raising on three occasions. R. 166, 173, 275. On all other occasions, she had normal (negative) straight-leg raising. R. 160, 163, 168, 170, 187, 189, 193-94, 277. Therefore, the ALJ had substantial evidence that the Plaintiff did not demonstrate sustained positive straight-leg raising required by Listing 1.04. Further, Plaintiff had no significant motor loss. While Plaintiff did have motor weakness prior to surgery in July  2002 (R. 275), on all other occasions she had normal motor strength and function. (R. 158-59, 160, 163, 166, 168, 170, 277).

Lastly, the medical evidence does not demonstrate an inability to ambulate effectively as defined in 1.00(B)(2)(b). While Plaintiff did exhibit an antalgic gait, this is not equivalent to the inability to ambulate effectively, which occurs when an individual cannot walk

7

"without the use of a hand-held assistance device(s) that limits the use of both upper extremities." 20 C.F.R. pt. 404, subpt. P, app. 1, §1.00(B)(2)(b)(1) (2006). As defined in the Regulations, an individual who cannot ambulate effectively would be one who requires two canes, crutches or a walker. 20 C.F.R. pt. 404, subpt. P, app. 1, §1.00(B)(2)(b)(2) (2006). Plaintiff has not alleged or proven such an inability – she testified that she only needs ambulatory assistance when she'll be out for an hour or more. R. 393.

The court in *Jones v. Barnhart*, 364 F.3d 501 (3d Cir. 2004), held that an ALJ need not use specific words or formula, but instead must provide discussion that demonstrates meaningful judicial review of the listings. *Id.* at 505. The ALJ specifically stated which listing criteria were not met based on the medical evidence of the record. R. 13-14. The ALJ therefore did exhibit substantial evidence when stating that Plaintiff did not meet or equal Listing 1.04.
The Plaintiff also asserts that the ALJ erred in concluding that Plaintiff's testimony concerning the intensity, duration and limiting effects of her symptoms were not entirely credible. An ALJ may not dismiss the evidence simply as "not credible," and instead must point to contrary medical evidence to support a finding that claimant lacks credibility. *Williams v. Sullivan*, 970 F.2d 1178, 1184-85 (3d Cir. 1992). Here, the ALJ referenced medical evidence to determine that substantial evidence existed to find that Plaintiff engaged in symptom magnification, thereby undermining her credibility. R. 1516.

Plaintiff underwent three functional capacity evaluations, all of which determined she engaged in some degree of symptom magnification. In October 2000, just two weeks after filing for Social Security Disability, Dr. Thor Mathos found evidence of symptom magnification as demonstrated by her score on an inappropriate symptom questionnaire and McGill score. R. 180. Specifically, Mathos opined that Plaintiff moved with exaggerated slowness during testing, evidenced by no visual signs of exertion like perspiration or change in color. *Id.* Thomas A. Buches, MS, PT, OCS, performed Plaintiff's second and third functional capacity evaluations in August 2004 and September 2004. In Plaintiff's August 2004 evaluation, Buches noted that she

performed in a manner indicative of symptom magnification because her "observed pain behaviors and movement patterns were out of proportion to pain reports during the test as observed by the physical therapist." R. 280. While Plaintiff could not perform a step climbing protocol during the evaluation, Buches observed her walking up a significant graded hill to get to her car upon exiting the clinic. R. 281. One month later, in Plaintiff's third and last functional capacity evaluation, Buches again noted "exaggerated pain behavior" and "symptom magnification." R. 288.

The state agency medical consultant concurred with these findings. R. 16, 315-16. In February 2005, Dr. Kumar Rama opined that Plaintiff exhibited symptom magnification, thereby making her statements partially credible. R. 322.

Dr. Mathos, Mr. Buches, and Dr. Rama found that Plaintiff could perform sedentary work. R. 197, 179, 291, 315-16. These medical reports show that Plaintiff's claims of total disability were not credible and that she could perform a greater range of work than she has alleged. R. 15-16.

Furthermore, an ALJ's finding of credibility is entitled to substantial deference. A reviewing court, therefore, should generally defer to the ALJ's credibility finding. Because substantial evidence supports the ALJ's conclusion that Plaintiff's complaints were not entirely credible, this finding is entitled to substantial deference and is affirmed.

Finally, Plaintiff argues that the ALJ erred in discounting the medical opinions of Plaintiff's primary care physician and pain management physician. The law governing an ALJ's treatment of a treating physician's opinion has been clearly established. If "a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must accord great weight to the reports of treating physicians, "especially when their

opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). However, "when a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). If the ALJ determines that a treating physician's opinion is outweighed by conflicting medical evidence, he may reject that opinion. *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985). If an ALJ's opinion is not fully favorable to the claimant, his opinion must contain reasons for the weight given to the treating source's opinion, supported by evidence of the record, and must be sufficiently specific so subsequent reviewers ascertain the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight. 61 Fed. Reg. 34490, 34492.

In the instant case, the ALJ afforded little weight to Dr. Gottron, Plaintiff's primary care physician. R. 16. As stated in *Newhouse*, the ALJ can reject a treating physician's opinion if it is outweighed by conflicting medical evidence. 753 F.2d at 286. Here, the ALJ referred to a February 16, 2006, memo where Dr. Gottron indicated that a functional capacity evaluation reflected Plaintiff's inability to perform most daily tasks or work regime due to her chronic pain. Dr. Gottron further stated that Plaintiff's pain was permanent and the severity and side-effects of her current medications prohibited her from performing any activities or meaningful job. R. 384. The ALJ afforded little weight to Dr. Gottron's opinion because every functional capacity evaluation determined that Plaintiff performed in a manner consistent with symptom magnification and could perform sedentary work. R. 180, 280, 288. Furthermore, Dr. Rama, the state agency physician, came to the same conclusion as the parties who performed the functional capacity evaluations. R. 315-316, 322. Therefore, Dr. Gottron's opinion is not entitled to significant weight because it was based on an erroneous factual statement of Plaintiff's ability to work. R. 16, 384.

Plaintiff's brief indicated that the ALJ failed to give Dr. Whitten's opinion controlling

10

weight. Pl's Br. at 16-18. The ALJ noted that Whitten related a markedly impaired gait, diffuse paralumbar tenderness, myospasm, right sacroiliac tenderness, and migraine headaches, but that an EMG and Nerve Conduction Study was normal. The ALJ further noted that Dr. Whitten's records failed to reflect any changes in medications or side effects therefrom. R. 15. However, Plaintiff failed to state what element of Dr. Whitten's opinion the ALJ ignored or improperly discounted. Plaintiff stated that Dr. Whitten "prescribes medication and offers alternatives for treatment," (Pl.'s Br. at 18) but failed to indicate which statement the ALJ disregarded. Earlier in her brief, Plaintiff referred to Dr. Whitten's deposition for her workers' compensation benefits hearing. Dr. Whitten testified that because of Plaintiff's significant pain, she is distracted a great deal of the time and is unable to concentrate fully on any given task. R.65. However, Dr. Whitten further testified that if Plaintiff wanted to return to sedentary work on a trial basis, he would allow her to do so. R. 65.

While the ALJ did consider the treatment notes and statements from Dr. Gottron and Dr. Whitten, these are not considered "medical opinions" under the Social Security Act. "Medical opinions" are "statements from physicians and psychologists or other acceptable medical sources that reflect judgment about the nature and severity of [the claimant's impairment(s), including [their] symptoms, diagnosis and prognosis, what [they] can still do despite impairment(s), and [their] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2)(2006). Dr. Gottron's statement that the Plaintiff was unable to work is an administrative conclusion based on an inaccurate reading of the functional capacity evaluations. R. 384. The Commissioner has the exclusive right to determine whether a claimant can work. 20 C.F.R. § 404.1527(e)(2006). Utilizing the functional capacity evaluations, other physicians' opinions, and the state agency physician's opinion, the ALJ held with substantial evidence that the Plaintiff was not disabled because she could perform a significant number of sedentary jobs in local and national economy. R. 17.

## VI.     CONCLUSION

For the foregoing reasons, the Court finds that the decision of the ALJ was supported by substantial evidence. Accordingly, the decision of the ALJ will be affirmed. An appropriate order will follow.

s/David Stewart Cercone
David Stewart Cercone
United States District Judge


cc.     A. Tereasa Rerko
        Quatrini Rafferty Galloway, P.C.
        550 East Pittsburgh Street Pittsburgh, PA 15601

        Paul Kovac
        Assistant United States Attorney